**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Trevor Ledbetter,

    **Plaintiff,**

v.

Schottenstein Property Group, LLC,

    **Defendant.**

Case No. 2:20-cv-1037

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

Schottenstein Property Group, LLC ("Defendant") moves for summary judgment on Trevor Ledbetter's ("Plaintiff") claims. ECF No. 53. Plaintiff moves to voluntarily dismiss two of his claims without prejudice. ECF No. 61. For the following reasons, Defendant's motion is **GRANTED**; Plaintiff's motion is **DENIED**.

### I.    FACTS

At the relevant times, Plaintiff worked for Defendant, ultimately holding the position of "Director of IT." Ledbetter Dep. 22:22–23:8, 31:6–8, ECF No. 49-1. Beginning in 2018, Plaintiff participated in an internal investigation (the "Investigation") into Plaintiff's supervisor, Brian Simpkins ("Simpkins"). *Id.* at 61:24–62:21. At first, the Investigation concerned allegedly falsified expense reports. *Id.* In late 2019, however, a former employee alleged that Simpkins sexually harassed her, and Plaintiff discussed those allegations with Defendant's

leadership. *E.g.*, *id.* at 69:1–19, 73:14–76:1. Plaintiff also told Defendant about other potential victims of Simpkins's alleged sexual harassment. *Id.* at 82:15–20.

At the same time as these allegations surfaced, David Sebenoler ("Sebenoler") took over Simpkins's role as Plaintiff's supervisor. Sebenoler Dep. at 8:15–18, 15:17–20, ECF No. 51-1. Within two weeks, Plaintiff's and Sebenoler's relationship deteriorated, and Defendant terminated Plaintiff. Ledbetter Dep. 114:17–203:21, ECF No. 49-1. Later, Plaintiff was indicted under Ohio law for committing cyber-attacks on Defendant. Crim. Trial. Tr. 215:9–216:12, ECF No. 52-1. Plaintiff was found not guilty of the charges following a bench trial. *Id.*

Additional facts will be provided in the analysis section, as needed.

## II. MOTION TO VOLUNTARILY DISMISS

Plaintiff moves to voluntarily dismiss Claims III and IV without prejudice. Mot., ECF No. 61.

The first question is how to construe this dismissal. As the Sixth Circuit has observed, its precedent on whether Rule 41 can be used to dismiss anything less than the entire action is "unclear." *Letherer v. Alger Grp., L.L.C.*, 328 F.3d 262, 266 (6th Cir. 2003). At times, the Sixth Circuit has approved of Rule 15, Rule 21, and Rule 41 as the appropriate mechanism for such an action. *See id.* (characterizing a partial dismissal as a motion under Rule 21); *Mgmt. Inv'rs v. United Mine Workers*, 610 F.2d 384, 394 (6th Cir. 1979) ("But while often dubbed a Rule 41(a) voluntary dismissal, the procedure [of dismissing less than the

entire case]. . . is more properly viewed as a Rule 15 amendment to the complaint." (citations omitted)); *see also United States ex rel. Doe v. Preferred Care, Inc.*, 326 F.R.D. 462, 464 (E.D. Ky. 2018) ("The Sixth Circuit has itself muddled Rule 41's contours when it affirmed a district court's Rule 41 dismissal of all claims against one defendant, but not the entire action."). In any event, Plaintiff's motion would be denied under any of the three rules.

## A. Rule 15

When, as here, a motion to amend would be brought after the deadline set by the Court's scheduling order, a party must satisfy the standards of both Rule 15(a) and Federal Rule of Civil Procedure 16(b)(4). *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (citation omitted). "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citation omitted). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Armatas v. Haws*, No. 21-3190, 2021 WL 5356028, at *3 (6th Cir. Nov. 17, 2021) (quotation marks and citation omitted). "Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906 (citation omitted).

Here, Plaintiff's motion is based on having newly discovered Sixth Circuit precedent. However, the relevant precedent (as much as caselaw counts as "new information") pre-dates the filing of the original Complaint, so Plaintiff cannot argue he could not have known about the same when the original Complaint was filed. *Cf. Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*, No. 316CV00002GFVTEBA, 2017 WL 3586042, at *3 (E.D. Ky. Aug. 18, 2017) (concluding that the plaintiffs did not show good cause in part because the plaintiffs were aware of the information supporting amendment months before seeking leave to amend). Further, discovery is over, and summary judgment is fully briefed. "[A]llowing amendment months after the close of discovery and after dispositive motions were filed and briefed" results in "significant prejudice" to Defendant. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (considering prejudice in the context of Rule 15). Plaintiff would thus be unable to show good cause, under Rule 16(b), to permit a late amendment.

However, even if Plaintiff satisfied Rule 16(b), amendment would not be proper under Rule 15(a). Under Rule 15(a), a motion for leave to amend "may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Seifu v. Postmaster Gen. of U.S.*, No. 21-4068, 2022 WL 19835788, at *4 (6th Cir. Dec. 12, 2022) (quotation marks and citations omitted). As just explained, allowing amendment at this time would

cause significant prejudice to Defendant. As a result, Plaintiff's motion for leave to amend would be alternatively denied under Rule 15(a).

At bottom, the Court would not allow Plaintiff to file an amended complaint that drops the two claims.

### B. Rule 21

Federal Rule of Civil Procedure 21 permits a court to, "[o]n motion or on its own, [] at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. In deciding whether to sever claims, courts consider several factors including:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.

*Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018) (citation omitted).

Even assuming Rule 21 could apply where Plaintiff is attempting to dismiss, not sever, claims, a Rule 21 motion would be denied. Here, all the claims arise out of the same underlying facts (Plaintiff's participation in the Investigation), and so share at least some common questions of fact. Keeping all the claims in one action would facilitate settlement and judicial economy. Similar witnesses and documentary evidence would be required for the different claims, and the Court sees no prejudice to keeping the claims together. Accordingly, all

the factors weigh against severing the claims, and a Rule 21 motion would be denied.

## C. Rule 41

Finally, if the Court construed the dismissal as a motion under Rule 41(a)(2), it would deny that motion. Whether voluntary dismissals under Rule 41(a)(2) should be granted is "subject to the discretion of the district court." *Wellfount, Corp. v. Hennis Care Ctr. of Bolivar, Inc.*, 951 F.3d 769, 774 (6th Cir. 2020) (citing Fed. R. Civ. P. 41(a)(2)). The purpose of requiring Court approval is to "protect the nonmovant from unfair treatment." *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994 (citation omitted). However, courts should generally deny Rule 41(a)(2) motions where the nonmovant would suffer "plain legal prejudice," not just "the mere prospect of a second lawsuit." *Id.* (citing cases).

When analyzing whether "plain legal prejudice" exists, the Court should consider the following:

> the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant.

*Id.* (citation omitted). Additionally, "when the law clearly dictates a result for the defendant, it is unfair to subject him to continued exposure to potential liability by dismissing the case without prejudice." *Id.* at 719 (citing cases).

Considering those factors here, dismissal without prejudice is inappropriate. First, Defendant has devoted significant resources to litigating Claims III and IV, including retaining an expert specifically to defend those claims. Resp., ECF No. 65. Second, Claims III and IV have been pending for over a year-and-a-half, and Plaintiff offers almost no explanation for the delay or for his request to dismiss without prejudice. Mot., ECF No. 61. Finally, and most importantly, summary judgment has been fully briefed and, for the reasons explained below, Defendant prevails on summary judgment.

At bottom, allowing Plaintiff to dismiss Claims III and IV without prejudice would essentially give Plaintiff a "fresh start" on those claims. That is not the purpose of Rule 41(a)(2). *See Onyeneho v. Farmers Ins. Exch.*, No. CIV. JKB-12-3692, 2014 WL 1918637, at *2 (D. Md. May 13, 2014) ("[The plaintiff] has cited no cases that view a plaintiff's desire for a fresh start as an acceptable reason for voluntary dismissal without prejudice, and the Court has found none.").

For these reasons, Plaintiffs' motion to dismiss Claims III and IV without prejudice is **DENIED**.

### III.  MOTION FOR SUMMARY JUDGMENT

The Court now turns to Defendant's motion for summary judgment.

### A.  Standard of Review

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that

demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

### B. Analysis

Plaintiff asserts retaliation claims against Defendant under Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act. Am. Compl. ¶¶ 71–90, ECF No. 32. Plaintiff also asserts a state-law claim for spoliation of evidence.[1] *Id.* ¶¶ 91–103. The Court addresses the federal claims before turning to the state-law claims.

#### 1. Title VII Claims

Title VII protects employees from retaliation for engaging in Title VII-protected activities. 42 U.S.C. § 2000e-3(a). When, as here, a plaintiff does not present "direct evidence of retaliation, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green* applies." *Freier-Heckler v. McDonough*, No. 22-3233, 2023 WL 2378507, at *6 (6th Cir. Mar. 7, 2023) (citation omitted). "Under the first stage of the *McDonnell Douglas* framework, a plaintiff must establish a prima facie case." *Id.*

To establish a prima facie case of Title VII retaliation, a plaintiff must demonstrate that: (1) she engaged in an activity protected by Title VII; (2) the defendant knew of the exercise of a protected right; (3) the defendant later took

---

[1] As Defendant points out, it is somewhat unclear whether Plaintiff is asserting a claim of spoliation of evidence or merely argues that, because of the alleged spoliation, the Court should impose a sanction on Defendant at trial. Because no claim will proceed to trial, the Court need not resolve this issue.

an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009).

If a plaintiff makes a prima-facie showing, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse action." *Warren v. Hollingsworth Mgmt. Servs., LLC*, No. 22-1064, 2022 WL 18542504, at *3 (6th Cir. Dec. 19, 2022) (cleaned up). If the defendant does so, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered were a pretext for discrimination or retaliation." *Id.* (citation omitted).

### a. Prima Facie Case

Plaintiff does not establish a prima facie case of Title VII retaliation because Plaintiff never engaged in a Title-VII-protected activity. Plaintiff asserts that his participation in the Investigation was protected activity.[2] *E.g.*, Am. Compl. ¶ 66, ECF No. 32.

"An employee may show that he engaged in 'protected activity' . . . by alleging conduct that falls within one of two clauses" in the Title VII retaliation

---

[2] To whatever extent Plaintiff argues that his protected activity was the filing of this lawsuit, that cannot support a Title VII claim because the alleged adverse actions—Plaintiff's termination and Defendant turning over evidence that eventually led to Plaintiff's criminal charges—occurred before Plaintiff filed this action. *See generally*, Compl., ECF No. 1; Sebenoler Decl. ¶ 18, ECF No. 53-1.

statute. *Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 549 (6th Cir. 2020). The first clause, the "opposition clause," protects an employee who has "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The second clause, the "participation clause" protects employees who have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.*

For claims brought under the participation clause, "Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination *only* where that investigation occurs pursuant to a pending Equal Employment Opportunity Commission charge." *Hamade*, 807 F. App'x at 550 (emphasis in original).

Here, Plaintiff pursues his claims under the participation clause because he alleges that he was retaliated against for "participating in an investigation into sexual harassment allegations made against []Simpkins." Am. Compl. ¶¶ 66, 72, 78, 85, ECF No. 32. In addition, there is no genuine dispute of material fact that there was no pending EEOC charge during the investigation. *See generally* sur-reply, ECF No. 67 (not disputing that there was no pending EEOC charge). Thus, there is no genuine issue of material fact that Plaintiff did not engage in protected activity and, as a result, his Title VII claims fail.

Plaintiff argues against this conclusion, insisting that he brings his claims under the opposition clause. *Id.* The Court is unconvinced. Plaintiff's Title VII

claims have, from the start, been premised on his *participation* in the Investigation. *See generally* Compl., ECF No. 1. Turning to the Amended Complaint, the words "oppose" and "opposition" do not appear anywhere in the Amended Complaint; instead, the Amended Complaint repeatedly alleges that Plaintiff engaged in protected activity by "participating in an investigation into sexual harassment allegations." Am. Compl., ECF No. 32. Thus, nothing in the Amended Complaint would put Defendant on notice that Plaintiff was pursuing a claim under the opposition clause. Similarly, Plaintiff's response to the motion for summary judgment focuses on Plaintiff's *participation* in the Investigation. *See generally*, Resp., ECF No. 62. The response in no way indicates that Plaintiff was pursuing a claim under both the participation and opposition clauses.

In sum, throughout this case, Plaintiff has been pursuing a claim under the participation clause. Only after learning about the dispositive precedent outlined above did Plaintiff even allude to the opposition clause. *See generally*, sur-reply, ECF No. 67. Tellingly, to support his argument that Plaintiff is bringing a claim under the opposition clause, Plaintiff points to only allegations related to his participation in the Investigation. *Id.* Thus, Plaintiff's insistence that he is bringing claims under the opposition clause falls flat.

Plaintiff also points to *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271 (2009), and argues that Plaintiff's allegations match *Crawford's* definition of "oppose." *See generally*, sur-reply, ECF No. 67. Even assuming that is correct, this argument does not help Plaintiff. The Sixth Circuit

has explained that *Crawford* applies to only claims brought under the opposition clause and, following *Crawford*, have held that participation in an investigation without a pending EEOC charge is not protected Title VII conduct under the participation clause. *See Hamade*, 807 F. App'x at 550; *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 347, n.3 (6th Cir. 2021) ("Jackson appears to acknowledge that her conduct is not covered by the participation clause of Title VII because her conduct was not related to an investigation of a formal EEOC charge."); *see also Whitcher v. McLaren Lapeer Region*, No. CV 20-11449, 2022 WL 187812, at *5 (E.D. Mich. Jan. 19, 2022) ("The Sixth Circuit has stated that the participation clause protects an employee's participation in an employer's *internal* investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge" (cleaned up; citing cases; emphasis in original)); *Semien v. Packaging Unlimited, LLC*, No. 3:12-CV-00643-H, 2014 WL 3508681, at *3 (W.D. Ky. July 15, 2014) ("Although the Supreme Court has not definitely ruled on this matter . . . the Sixth Circuit has limited protected activity under the participation clause to the internal investigations pursuant to a pending EEOC charge" (citations omitted)). In light of this case law, *Crawford* does not apply to claims brought under the participation clause, even if the underlying conduct could have meet *Crawford*'s definition of "oppose." Accordingly, Plaintiff cannot rely on *Crawford*.

At bottom, there is no genuine issue of material fact that Plaintiff did not engage in Title VII-protected activity.

### b. Pretext

In the alternative, even if Plaintiff could show that he engaged in a protected activity (and could establish the rest of the prima facie case), his Title VII claims would fail because he cannot show Defendant's proffered reason was pretextual.

"Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Hood v. City of Memphis Pub. Works Div.*, No. 21-5372, 2023 WL 1880399, at *6 (6th Cir. Feb. 10, 2023) (quotation marks and citations omitted). The "burden at the pretext stage is onerous: plaintiffs must demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for retaliation." *Id.* (cleaned up). An employee can meet this burden by showing that the employer's proffered reasons: "(1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct." *Warren*, 2022 WL 18542504, at *4 (quotation marks and citation omitted).

Defendant's proffered reason is that Plaintiff "was fired for insubordination, including repeatedly failing to provide Sebenoler with the requested global access [to certain systems]." Mot. 18, ECF No. 53. That is a legitimate, nondiscriminatory reason. *See Lisan v. Wilkie*, 835 F. App'x 831, 836 (6th Cir. 2020) (explaining that insubordination can be a legitimate nondiscriminatory reason for an adverse employment action (citing cases)).

Plaintiff argues this is pretextual, focusing on the alleged failure to provide access. Resp. 23–26, ECF No. 62. Plaintiff argues, essentially, that Sebenoler failed to understand the procedures he needed to follow to get access and that, at least a few days before Plaintiff was fired, Sebenoler already had the access he wanted. *Id.*

Even taking Plaintiff's view of the facts as true, he does not show pretext. The problem for Plaintiff is that, even if the real issue was Sebenoler's misunderstanding of the procedures to gain access to the system (rather than Plaintiff's obstreperousness), Plaintiff cannot refute the evidence that Sebenoler *believed* Plaintiff was unreasonably failing to grant Sebenoler access. Moreover, the fact that, at some point, Sebenoler got access does not change that *in Sebenoler's view*, Plaintiff did not provide the access timely (*i.e.*, when Sebenoler requested it several days earlier).

Moreover, Plaintiff does not meaningfully address the other proffered reason for his termination: that Plaintiff was insubordinate in other ways, too. There is ample evidence from email threads between Plaintiff and Sebenoler that shows Plaintiff and Sebenoler had a tense—if not hostile—relationship. *E.g.*, Emails, ECF Nos. 49-12, 49-13, 49-16, 49-18, 49-22. Plaintiff argues this "banter" is "irrelevant" and that some emails are missing from the thread. These arguments are unpersuasive. First, Plaintiff's conclusory insistence that the emails are "irrelevant" is unconvincing without further explanation for their irrelevancy. Second, even if the Court takes Plaintiff's word for it that there are

other emails that put Plaintiff in a better light, that does not change that the emails already before the Court show Plaintiff treated Sebenoler disrespectfully.

In sum, Plaintiff cannot raise a genuine dispute of material fact as to whether Defendant's proffered reason for Plaintiff's termination is pretextual.

Accordingly, because Plaintiff's Title VII claims fail at the prima facie and pretext stages, Defendant is entitled to summary judgment on the Title VII claims.

### 2. State Law Claims

Plaintiff's only remaining claims are his state-law claims. The Court lacks independent subject-matter jurisdiction over those claims and declines to exercise its supplemental jurisdiction over it.

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (internal quotation marks and citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well" (modified by *Rosado v. Wyman*, 397 U.S. 397, 402–04 (1970)). A district court shall "consider and weigh several factors" when determining whether to exercise supplemental jurisdiction, including the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). District courts can also consider factors such as: whether the

plaintiff engaged in manipulation by dismissing federal claims; whether discovery had been completed; whether summary judgment has been briefed; the degree of familiarity the court has with the issues; and if the court had invested significant time in the decision. *Gamel*, 625 F.3d at 952 (citation omitted).

On balance, the Court finds the weight of these factors is against the continued exercise of supplemental jurisdiction. First, all federal claims have been dismissed, and only state-law claims remain. There is "a strong presumption in favor of dismissing supplemental claims" once the federal claims have been dismissed. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1250 (6th Cir. 1996) (citing cases). Next, although discovery is complete and summary judgment has been briefed, the Court has relatively little familiarity with the case; indeed, this is the first substantive opinion the Court has issued in the case. Finally, there is no indication that Plaintiff has tried to manipulate the forum.

These factors taken together weigh against the continued exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over the stand-alone state-law claims. The state-law claims are **DISMISSED WITHOUT PREJUDICE**.

## IV. CONCLUSION

For these reasons, Defendant's motion is **GRANTED**; Plaintiff's motion is **DENIED**.

The Clerk shall enter judgment for Defendant and close the case.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**